UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MARIO PIZANO,<br><br>　　　　　Defendant. | No. 2:17-cv-1655 TLN DB<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Pending before the court is plaintiff Scott Johnson's motion for default judgement against defendant Mario Pizano. (ECF No. 8.) This motion came on for hearing before the undersigned on January 18, 2019. (ECF No. 11.) Attorney Bradley Smith appeared on behalf of plaintiff. No appearance was made by, or on behalf of defendant.

Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that plaintiff's motion be granted.

BACKGROUND

Plaintiff Scott Johnson initiated this action, through counsel, on August 10, 2017, by filing a complaint and paying the filing fee. (ECF No. 1.) Therein, plaintiff claims to be a level C-5 quadriplegic and who "uses a wheelchair for mobility and has a specially equipped Van."

////

////

1

(Compl. (ECF No. 1) at 1[1].) Plaintiff alleges that the defendant, Mario Pizano, was the owner of the Xochi-Mex restaurant during the relevant period. (Id. at 1-2.) The plaintiff further alleges that the premises "Xochi-Mex" violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*., ("ADA"), and the Unruh Civil Rights Act, California Civil Code § 51, ("Unruh Act") by failing to provide an accessible parking space, an accessible transaction counter, and accessible dining tables at the property. (Id. at 5-8.)

On October 4, 2017, plaintiff filed proof of service of summons.[2] (ECF No. 4.) On October 11, 2017, plaintiff filed a request for entry of defendant's default. (ECF No. 5.) The Clerk entered defendant's default on October 12, 2017. (ECF No. 6.) Plaintiff filed a motion for default judgement on December 17, 2018. (ECF No. 8.) Plaintiff's motion for default judgement seeks injunctive relief for providing an accessible parking space, an accessible transaction counter and accessible dining tables at the property; statutory damages for $4,000; and attorneys' fees and costs in the amount of $4,879.50. (ECF Nos. 8-2 at 2; 8-1 at 7; and 8-4 at 7.)

On January 18, 2019, a hearing was held before the undersigned on the motion for default judgement. (ECF No. 11.) Despite being served with notice of the motion and hearing, defendant did not appear at the hearing and did not file an opposition to the motion for default judgement. (ECF No. 8-8 at 1; ECF No. 11.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

---

[1] Page number citations such as this are to the page number reflected on the court's CM/ECF system and not to the page numbers assigned by the parties.

[2] The proof of service of summons states that defendant was served on August 29, 2017.

2

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

**A. Appropriateness of the Entry of Default Judgment under the Eitel Factors**

Plaintiff's motion for default judgement seeks judgement on the two claims presented in the complaint: a cause of action under Title III of the Americans with Disabilities Act, and a cause of action under the California Unruh Civil Rights Act. (Pl.'s MDJ (ECF No. 8-1) at 7-12.) The factual allegations of plaintiff's complaint are taken as true pursuant to the entry of default against the defendant.

**1. Factor One: Possibility of Prejudice to Plaintiff**

The first Eitel factor considers whether plaintiff would suffer prejudice if default judgment is not entered. When a defendant has failed to appear and defend the claims, a plaintiff will be without recourse and suffer prejudice unless default judgment is entered. Vogel v. Rite Aid Corp., 992 F.Supp.2d 998, 1007 (C.D. Cal. 2014) (granting a default judgement for a

disabled plaintiff suing under the ADA and Unruh Act, relying upon this rationale). Here, the defendant has failed to appear and defend against plaintiff's claims of discrimination under the ADA and the Unruh Act. Absent entry of default judgement, plaintiff would likely be without recourse against the defendant. Because plaintiff will suffer prejudice if he is without recourse, this factor favors an entry of default judgment.

**2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The second and third factors are (1) the merits of plaintiff's substantive claim, and (2) the sufficiency of the complaint. Eitel, 782 F.2d at 1471-72. Thus, the second and third Eitel factors require plaintiff to state a claim on which plaintiff can recover. PepsiCo, Inc. v. California Security Cans, 238 F.Supp.2d, 1172, 1175 (2002); see Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). Given the close relationship between the two inquiries, factors two and three are considered together. As mentioned, plaintiff seeks default judgment on the following claims: (1) discrimination in violation of Title III of the Americans with Disabilities Act; and (2) discrimination in violation of the Unruh Civil Rights Act. (Pl.'s MDJ (ECF No. 8-1.) at 7, 11.)

**(1) Title III of the ADA**

**(a) Applicable Legal Standards under the ADA**

Title III of the ADA prohibits discrimination against an individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." Roberts v. Royal Atlantic Corp., 542 F.3d 363, 368 (2nd Cir. 2008); U.S.C. § 12182(a). Generally, the concept of "discrimination" under the ADA not only includes obviously exclusionary conduct — such as a sign stating that persons with disabilities are unwelcome, but also extends to more subtle forms of discrimination — such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011); PGA Tour, Inc. v. Martin, 532 U.S. 661, 674-75 (2001). With respect to existing facilities, discrimination includes

////

4

"a failure to remove architectural barriers … where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A).

To determine if a barrier exists, the ADAAG[3] establishes the technical standards. If a barrier violates these standards relating to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes "discrimination" under the ADA. Chapman, 631 F.3d at 947; Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1034 (9th Cir. 2008). Removal is readily achievable where it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 1218(9).

To prevail on his Title III ADA claim, plaintiff must establish that (1) he is disabled within the meaning of the ADA; (2) that defendant owns, leases, or operates a place of public accommodation; and (3) that defendant discriminated against the plaintiff within the meaning of the ADA. Chapman, 631 F.3d at 950.

For an ADA plaintiff to establish Article III standing to pursue injunctive relief, he must demonstrate the threat of a future repeated injury is real and immediate. Id. at 946. To demonstrate sufficient likelihood of future harm, a plaintiff can establish that he intends to return to a noncompliant place of public accommodation and where he is "likely to reencounter a discriminatory architectural barrier." Id. at 950. Alternatively, a plaintiff can show that the "discriminatory architectural barriers deter him from returning to a noncompliant accommodation," but that he would return if the barriers were removed. Id.

**(b) Analysis**

In the instant case, plaintiff established standing under the intent-to-return theory. In his complaint, plaintiff alleges that "he frequents the Stockton area" and that he would "like to return and patronize the Restaurant but will be deterred from visiting until the defendants cure the violation." (Compl. (ECF No. 1) at 3-4.) Plaintiff further alleges that he has eaten at the Xochi-Mex restaurant five times since August 2015 and "will return to patronize the Restaurant as a

---

[3] The ADA Accessibility Guidelines (ADAAG) are promulgated by the Attorney General to "carry out the provisions" of the ADA, 42 U.S.C. § 12186(b). These guidelines "lay out the technical structural requirements of places of public accommodation." Fortyune v. Am. Multi–Cinema, Inc., 364 F.3d 1075, 1080-81 (9th Cir. 2004).

customer once the barriers are removed." (Id.) Thus, there is standing because plaintiff has suffered an injury-in-fact, and he has demonstrated a likelihood of future injury sufficient to support injunctive relief. Chapman, 631 F.3d at 947.

As to the merits of the ADA claim, there is little dispute that the first two requirements have been met. Plaintiff alleges in the complaint that "[he] is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van." (Compl. (ECF No. 1) at 1.) There can be little doubt that he is "disabled" within the meaning of the ADA. See 42 U.S.C. § 12102 (defining "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual.").

In addition, plaintiff alleges that Xochi-Mex "is a facility open to the public, a place of public accommodation, and a business establishment" and that the defendant owned the Xochi-Mex restaurant in August 2015, October 2015, December 2015, and April 2016. (Compl. (ECF No. 1) at 3.) Xochi-Mex is a restaurant which is expressly identified as a place of public accommodation and subject to Title III of the ADA. See 42 U.S.C. § 12181 (7)(B). In support of these allegations, plaintiff has filed a copy of defendant's alcoholic beverage license which identifies Xochi-Mex as an "eating place." (Pl.'s Ex. 4 (ECF No. 8-7) at 2.)

With respect to the third element, whether defendant discriminated against plaintiff, the factual allegations of the complaint establish the following. First, that the handicap parking space "did not have an access aisle that accompanied it on the days of plaintiff's visits." (Compl. (ECF No. 1) at 3.) The ADAAG requires parking spaces marked for individuals with disabilities to have access aisles. 2010 Standards § 502.1. ADAAG also requires access aisles to be at the same level as the parking space they serve. 2010 Standards § 502.4. Here the failure to provide accessible parking space is a barrier, thus constituting discrimination.[4]

Second, there is no lowered, 36-inch portion of the transaction counter for use by persons in wheelchairs. (Compl. (ECF No. 1) at 3.) The ADAAG requires counter surface height of 38

---

[4] Barriers are determined by reference to the ADA Accessibility Guidelines (ADAAG). Chapman, 631 F.3d 939, 945. The ADAAG are listed in 36 CFR Appendix D to Part 1191.

inches (965 mm) maximum above the finish floor or ground. 2010 Standards § 904.3.2. Lastly, "there are tables provided outside for dining [that] are not accessible to wheelchair users because: (1) there is no knee clearance measuring at least 27 inches high, 30 inches wide and 19 inches deep; and/or (2) the top of the table is higher than 34 inches." (Compl. (ECF No. 1) at 3.) Where dining surfaces are provided, the ADAAG requires that at least 5 percent of seating spaces be accessible to individuals with disabilities. 2010 Standards § 226.1.

The inaccessible parking space, transaction counter and seating tables are architectural barriers that violate the ADAAG standards on parking, counters, and dining surfaces. See, e.g., Estrada v. South Street Property, LLC, No. 2:17–CV–00259 CAS JCx, 2017 WL 3461290, at *4 (C.D. Cal. Aug. 11, 2017) ("[L]ack of accessible parking spaces constitutes an architectural barrier under the ADA."); Johnson v. Vuong, No. 2:14-cv-00709 KJM DB, 2018 WL 3388456, at *4 (E.D. Cal. July 11, 2018) ("The inaccessible transaction counter is an architectural barrier that violates the ADAAG standards on counters.").

Finally, defendant "exercised control and dominion over the conditions at this location," defendant "had the means and ability to make the change," and the identified violations "are easily removed without much difficulty or expense." (Compl. (ECF No. 1) at 4 & 5.) Therefore, removal of these barriers is "readily achievable" by defendant, and defendant's failure to do so constitutes "discrimination" under the ADA. 42 U.S.C. § 12182(b)(2)(A).

Accordingly, the elements of the ADA claim are satisfied, and plaintiff has met his burden to state a prima facie Title III discrimination claim. The second and third Eitel factors favor the entry of default judgment. See Lozano v. C.A. Martinez Family Ltd. Partnership, 129 F.Supp.3d 967, 972-73 (S.D. Cal. 2015); Vogel v. Rite Aid Corp., 992 F.Supp.2d 998, 1009-10 (C.D. Cal. 2014).

**(2) California's Unruh Civil Rights Act**

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business

7

establishments of every kind whatsoever." Cal. Civ. Code § 51(b). As expressly provided by statute, a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51 (f); see also Munson v. Del Taco, Inc., 46 Cal. 4th 661, 664-65 (Cal. 2009). Here, because plaintiff's complaint properly alleges a prima facie claim under the ADA, plaintiff has also properly alleged facts supporting a claim under the Unruh Civil Rights Act.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Eitel, 782 F.2d at 1471-72; see also Philip Morris USA, Inc v. Castworld Prods., Inc., 219 F.R.D. 494, 500. (C.D. Cal. 2003). In this case, plaintiff seeks injunctive relief; statutory damages of $4,000 under the Unruh Civil Rights Act; and attorney's fees and costs in the amount of $4,879.50, for a total award of $8,879.50. (Pl.'s Compl. (ECF No. 1) at 8, & Pl.'s MDJ (ECF No. 8-1) at 12.) Although the undersigned more closely scrutinizes the requested statutory damages, attorney's fees, and costs below, the undersigned does not find the overall sum of money at stake to be so large or excessive as to militate against the entry of default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

This Eitel factor considers the possibility that material facts are disputed. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, there appears to be no material facts in dispute. This factor weighs in favor of a default judgment.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

This Eitel factor considers the possibility that the defendant's default was the result of excusable neglect. Despite having been properly served with plaintiff's complaint, the requests for entry of default, and the instant motion for default judgment, defendant Mario Pizano has been non-responsive in this action. (ECF Nos. 4, 5-2, 8-8, and 11.) Thus, the record suggests that defendant Mario Pizano has chosen not to defend this action, and that the default did not result from excusable neglect. Accordingly, this Eitel factor favors the entry of default judgment.

////

### 6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

The final Eitel factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment. Eitel, 782 F.2d at 1472. Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is warranted. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. 2010). As defendant Mario Pizano has failed to respond in this matter, a decision on the merits is impossible. Therefore, the seventh Eitel factor does not preclude the entry of default judgment.

### 7. Summary of Eitel Factors

In sum, upon consideration of all the Eitel factors, the undersigned finds that plaintiff is entitled to a default judgment against defendant and recommends that such a default judgment be entered. The undersigned therefore turns to plaintiff's requested damages and injunctive relief.

## B. Terms of the Judgment to Be Entered

### 1. Injunctive Relief

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. See Landstar Ranger, Inc. v. Path Enterprises, Inc., 725 F.Supp.2d 916, 920 (C.D. Cal. 2010.). Plaintiff's motion for default judgment seeks injunctive relief. (Pl.'s MDJ (ECF No. 8-1) at 7.) Injunctive relief may be granted "when architectural barriers at defendant's establishment violate the ADA . . . ." Vogel, 992 F.Supp.2d at 1015.

Having found that plaintiff has established that defendant violated the ADA, the undersigned recommends that plaintiff's request for injunctive relief be granted, and defendant be ordered to remove the barriers at Xochi-Mex identified in plaintiff's complaint, to the extent he has the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities. See Vogel, 992 F.Supp.2d at 1015.

**2. Statutory Damages**

The Unruh Act provides that a plaintiff subjected to discrimination is entitled to recover $4,000 for each occasion on which he was denied equal access. Cal. Civ. Code § 52(a). To recover statutory damages, a plaintiff need only show that he was denied full and equal access, not that he was wholly excluded from enjoying defendant's services. Vogel, 992 F.Supp.2d at 1015; Hubbard v. Twin Oaks Health and Rehabilitation Center, 408 F.Supp.2d 923, 932 (E.D. Cal. 2004). "A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(b).

In support of the request for $4,000 in statutory damages, plaintiff has submitted a declaration stating that plaintiff went to Xochi-Mex on two occasions and has "driven by there on a number of other occasions for compliance checks."[5] (Pl.'s MDJ (ECF No. 8-5) at 3.) Accordingly, the undersigned recommends that plaintiff be awarded $4,000 in statutory damages.

**3. Attorney's Fees and Costs**

Plaintiff's motion for default judgment seeks an award of $4,879.50 in attorney's fees and costs. (Pl.'s MDJ (ECF No. 8-1) at 12.) Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs in the court's discretion. Here, plaintiff requests $647 in filing fees and service and investigator costs, which are reasonable and should be awarded. (Pl.'s MDJ, Ex. A (ECF No. 8-4) at 7.)

Plaintiff also requests $4,232.50 in attorney fees for 10.4 hours of work. (Pl.'s MDJ, Ex. A (ECF No. 8-4) at 8.) To determine reasonable attorney's fees, the starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1933). This is called the "loadstar" method. The fee applicant must submit evidence of the hours worked and the rates claimed. Id.

---

[5] There is possibly a discrepancy regarding the number of times plaintiff has gone to Xochi-Mex to eat. In his complaint, plaintiff appears to allege to have eaten at Xochi-Mex five times, but in his declaration in support of default judgement, he alleged to have eaten at the restaurant on two occasions. (ECF No. 1 at 3 & No. 8-5 at 3.) Nonetheless, plaintiff seeks damages for only one occasion. Accordingly, the undersigned need not resolve this discrepancy.

**(1) Reasonable Hourly Rates**

In assessing application for attorney's fees, the reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011). It is also the general rule that the "relevant legal community" is the forum in which the district court sits. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013); Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010); Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Here, plaintiff requests attorney fees at hourly rates of $350 and $425. (Pl.'s MDJ (ECF No. 8-4) at 4-5.) Plaintiff asserts that attorney Mark Potter is the founding member of his law firm and that he has 25 years of experience handling disability related issues. (Id. at 3-4.) Moreover, it is asserted that attorney Potter's billing rate of $425 per hour is a fair rate for attorneys with similar experience and expertise and that this billing rate "has been granted in scores of recent federal court rulings, granting default judgment applications." (Id. at 4.)

Plaintiff also asserts that attorney Russell Handy is an experienced attorney and is qualified to bill at the rate of $425 per hour. (Id.) Additionally, attorney Phyl Grace has 24 years of experience and an hourly billing rate of $425 has been granted attorney Grace in "recent federal court rulings." (Id. at 5.) Likewise, "recent federal court rulings," have awarded attorney Price a rate of $350 per hour. (Id.) Despite reference to recent federal court rulings, however, plaintiff's motion does not address the prevailing market rate in this district.

A review of recent rulings in this district, finds that in April of this year, this court found that the reasonable rate for attorneys Potter and Handy was $325 per hour, and that the reasonable rates for attorneys Grace and Price was $300 and $175, respectively. Johnson v. Warren, No. 2:14-cv-1497-MCE-AC, 2019 WL 1773518, at *3 (E.D. Cal. Apr. 23, 2019). In February of this year, the court awarded hourly rates of $300 to attorney Potter, $300 to attorney Handy, $250 to attorney Grace, and $150 to attorney Price. Johnson v. Hey Now Properties, LLC., No. 2:16-cv-02931 WBS KJN, 2019 WL 586753 at *3 (E.D. Cal. Feb. 13, 2019). And in July of 2018, attorney Potter was awarded an hourly rate of $300, and attorneys Grace and Price were awarded

$200 per hour. Johnson v. Nagy., No. 2:14-cv-01065-MCE AC, 2018 WL 3474466, at *2-3 (E.D. Cal. July 19, 2018).

"In this regard, the overwhelming . . . weight of authority establishes that the current prevailing rate for attorney's fees for similar services by lawyers of reasonably comparable skill, experience, and quality is $250 - $300 per hour in the Sacramento division of the Eastern District of California." Johnson v. Vuong, No. 2:14-cv-0709 KJM DB, 2018 WL 3388456, at *6 (E.D. Cal. July 11, 2018). Accordingly, the undersigned will recommend a reasonable hourly rate of $300 per hour for attorneys Potter and Handy, $250 for attorney Grace, and $150 for the less experienced associate, attorney Price. See Johnson v. Swanson, No. 2:15-cv-0215 TLN DB, 2017 WL 3438735, at *3 (E.D. Cal. Aug. 10, 2017) ("As for Mr. Price . . . the Court finds that $150 per hour is a reasonable hourly rate.").

### (2) Hours Reasonably Expended

A prevailing party is entitled to compensation for attorney time "reasonably expended on the litigation." Webb v. Board of Educ. of Dyer County, 471 U.S. 234, 242 (1985). The attorney's fee applicant bears the burden of establishing the appropriate number of hours expended. Hensley, 461 U.S. at 437; see also Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1100 (E.D. Cal. 2011) ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.").

Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citation and internal quotations omitted). "Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001)).

Here, plaintiff's motion for default judgment seeks compensation for 10.4 hours expended on this action. (ECF No. 8-4, at 8.) Specifically, it seeks compensation for 3.9 hours for attorney Potter, 3.5 hours for attorney Handy, .5 hours for attorney Grace, and 2.5 hours for attorney Price. (Id.)

The undersigned finds this amount of time is reasonable when compared to similar ADA cases coming before the court on motions for default judgment. See, e.g., Johnson v. Patel, No. 2:15-cv-02298-MCE-EFB, 2017 WL 999462, at *3 (E.D. Sept. 21, 2015) (finding "the 8.8 hours expended in filing of motion for the ADA default judgment is admittedly modest"); Loskot v. D & K Spirits, LLC, No. 2:10-cv-0684 WBS DAD, 2011 WL 567364, at *4 (E.D. Cal. Feb. 15, 2011) (awarding 17.3 hours expended through filing of motion for default judgment); Johnson v. Hey Now Properties, LLC., No. 2:16-cv-02931-WBS-KJN, 2019 WL 586753 at *3 (E.D. May 16, 2018) (awarding 57.3 hours expended in the ADA action).

### (3) Summary

As noted above, plaintiff should be awarded 3.9 hours at $300 per hour for attorney Potter, 3.5 hours at $300 for attorney Handy, .5 hours at $250 per hour for attorney Grace, and 2.5 hours at $150 per hour for attorney Price for the time expended in this matter. Given the 10.4 hours in total time expended, that yields a total fee award of $2,720. When added to the $647 in filing fees, service costs and investigator costs, the total amount of attorney's fees and costs to which plaintiff is entitled is $3,367.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's December 17, 2018 motion for default judgment (ECF No. 8) be granted;

2. Judgment be entered against defendant Mario Pizano;

3. Defendant Mario Pizano be ordered to pay $4,000 in statutory damages;

4. Defendant be ordered to correct the violations at the Xochi-Mex identified in plaintiff's complaint, to the extent that defendant has the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities;

5. Defendant be ordered to pay plaintiff $3,367 in attorneys' fees and costs; and

6. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections

with the court.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 14, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB: am(6)
DB\orders\orders.civil\johnson1655.mdj.f&rs